In the interest of THREE MINOR CHILDREN

High Court of American Samoa
Trial Division

JUV. NO. 120-85
JUV. NO. 125-85
JUV. NO. 014-86

May 15, 1986

Before REES, Chief Justice.

These three cases were heard in April by a
juvenile justice referee designated by the former
Acting Chief Justice of the High Court. The

recommendations of the referee have come to the Chief Justice for his approval or disapproval on behalf of the Court.

Jurisdiction over juvenile cases, including termination of parental rights, is vested in the High Court (A.S.C.A. § 3.0208(a)(4) and 45.0115) while adoption decisions are left to the District Court (A.S.C.A. § 3.0302(a)). Because these matters are so intimately related the former District Court judge was appointed referee, pursuant to statute (A.S.C.A. § 45.0140), to hear and make recommendations in termination cases. As the workload of the District Court increased, the judge asked that he be relieved of the responsibility to hear these cases. At that time Acting Chief Justice Murphy was alone on the High Court bench and was faced with the impending departure of the District Court judge and the need to assume his duties as well. To relieve this burden Justice Murphy appointed a new referee.

The High Court is now back at full strength and a new District Court judge pro tempore has been appointed. The burden on the courts has eased and the need for a referee to hear termination cases has, for the time being, been eliminated.

Termination of the parent-child relationship is one of the most serious and important matters in the lives of both the parents and child involved, yet these cases have sometimes been handled without some of the legal safeguards that protect people's rights even in far less important cases. There is rarely a very extensive record and the true motives and desires of the natural parents are often very difficult to discern. The problem is compounded by the fact that in most termination cases the natural parents are not even heard by the court or referee. The only rules presently applicable to such cases are District Court Rules rather than High Court rules, and they do not require or even encourage the presence of the parents in termination cases. See District Court Rule 22. The only real information about them comes from a brief report by the Child Protection Services which interviews the parents, if they make themselves available, to establish that they know what they are doing in allowing their child to be taken from them and that they do so freely. Unfortunately, such reports are not often very revealing and the worker who interviewed the parents has not customarily testified in court.

5

Based on this scant record --- and often only on the testimony of the prospective adopting parents --- the High Court referee must recommend that the termination be granted or denied. And on this record a Justice of the High Court must decide whether or not to follow that recommendation.

The United States Supreme Court has held that "state intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause." Santosky v. Kramer, 455 U.S. 745, 753 (1982) (brackets in original), quoting the first dissenting opinion in Lassiter v. Department of Social Services, 452 U.S. 18, 37 (1981). The Court also held that the process due in termination proceedings turns on a balancing of the three distinct factors specified in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). These factors are "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." Santosky, supra, at 754. In Santosky the Court went on to hold that "before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Id. at 747-48.

Our termination process involves the most important of human relationships, the relation of parent to child. The risk of error under the casual procedures that have sometimes been followed---the risk that a parent's rights will be terminated without a fair opportunity to be heard or without the parent's understanding the legal consequences of a termination---seems very high. And there is no important government interest in procedures under which the court remains ignorant of information that is essential to the fulfilment of its duties to the parents and to the child.

The Court need not decide, however, whether the procedures that have sometimes been followed in the past for terminating parental rights violate the United States Constitution, or even whether the relevant provisions of the Constitution apply in Samoa precisely as they apply in the fifty states. For it is also extremely doubtful whether these casual procedures are consistent with the statutes enacted by the Legislature of American Samoa to

6

govern the relinquishment and termination of parental rights.

By its own terms the purpose of the territory's Juvenile Justice Code is to "secure for each child...such care and guidance, preferably with his own family, as will best serve his welfare and the interests of Samoan society" and to "remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered." A.S.C.A. § 45.0102(a). The Code is also quite specific in requiring that when a relinquishment is sought--- when the natural parents desire to give up their child so that a relative or some other person can adopt him --- the parents themselves shall join in the petition, that they shall be counseled and fully advised about the consequences, and that the Court find the relinquishment to be in the best interest of all parties concerned. A.S.C.A. § 45.0402. Effectively this section also requires that the parents actually be present in court for the trial. See DCR 23.

The alternative proceeding, a legal termination of parental rights, may legally be used only when the child has been neglected by his parents or is homeless. A.S.C.A. §§ 45.0103(19), 45.0401(1). In this case it is not strictly necessary that the parents be in court, and sometimes it is impossible. But in many cases it will be quite difficult for the Court to determine what is in the best interest of the child unless the parents testify.

Attorneys in termination cases should therefore make every effort to secure the presence of both parents in court --- bearing in mind the existence of the subpoena power and other procedures to compel the attendance of recalcitrant witnesses---rather than securing waivers of appearance from them. When the attorney is genuinely unable to contact one or both natural parents, or when their attendance would occasion extreme hardship, they need not be present at a termination proceeding. But this should be the exception rather than the rule.

Similarly, the social worker who interviews the parents for the Child Protective Services is an important witness who should be expected to testify except in extraordinary cases.

The Court is cognizant of the fact that under Samoan custom adoption is far more common than it has been in the fifty states. It is therefore extremely important that the fa'a Samoa, and particularly the expertise of the five Associate Judges of the High Court in the customs and traditions of the Samoan people, inform the Court's judgment of what is in the best interest of the child and the other parties to a termination or a relinquishment proceeding. By assuring strict compliance with the statutes enacted by the Legislature of American Samoa, and with procedures designed to ascertain the true desires and circumstances of all parties, the Court can hope to preserve and reinforce the special concern for children that is such an important and impressive aspect of fa'a Samoa.

In these three cases counsel should schedule hearings before the Court and should be prepared to adduce the relevant information from all appropriate persons.